The Town of Abington

*v.*

Thomas B. Cabeen.

*Filed at Ottawa March 28, 1883.*

Statute—*whether the provisions of an act are expressed in the title —of the "Act to incorporate the Dixon and Quincy Railroad Company"— authorizing townships to give aid to the company, etc.* The fourth section of the act approved March 4, 1869, entitled "An act to incorporate the Dixon and Quincy Railroad Company," assumes to confer on townships power to subscribe to the capital stock of or to make donations to said company, and provides for elections to decide as to such subcriptions or donations, for taxation for the payment of the same if voted, and for the issue of bonds to represent the same, etc. It is held that section does not cover and embrace a subject not expressed in the title of the act, within the meaning of the provision in the constitution of 1848, declaring that "no private or local law

which may be passed by the General Assembly shall include more than one subject, and that shall be embraced in the title," and is therefore not unconstitutional. The provisions in such section are so far germane to the subject expressed in the title as to be fairly embraced therein.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. MILLER, LEWIS & BERGEN, for the appellant:

The section in the act of March 4, 1869, entitled "An act to incorporate the Dixon and Quincy Railroad Company," which confers power upon municipal corporations to subscribe to the capital stock in such company, and to issue corporate bonds therefor, is in violation of section 23, article 3, of the constitution of 1848, which provides, "no private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." Such section violates this clause of the constitution by special legislation in increasing the powers of municipalities to incur indebtedness, in a private act relating to a distinct subject,—the incorporation of a railroad company,—thus embracing two separate subjects, only one of which is expressed in the title. *Giddings* v. *San Antonio,* 47 Texas, 553; Cooley's Const. Lim. 144; *City of San Antonio* v. *Gould,* 34 Texas, 49; *Cannon* v. *Hemphill,* 7 id. 208; *Mayor* v. *State of Georgia,* 4 Ga. 38.

An act to incorporate a railroad company means an act which confers the ordinary and appropriate powers, rights and privileges incident and adequate to such a franchise. *Thomas* v. *Dakin,* 22 Wend. 70.

The description of the act can not fairly be construed as including the conferring of new powers upon existing municipal corporations, and prescribing a mode for exercising such new powers. No one, from reading the title, would suppose that this object was embraced in it.

Mr. B. C. TALIAFERRO, also for the appellant:

That this section 4 of the charter violates the constitutional prohibition, see *Welch et al.* v. *Post*, 99 Ill. 471; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Village of Lockport* v. *Gaylord*, 61 id. 276; *Giddings* v. *San Antonio*, 47 Texas, 548.

. The township of Abington, being a municipal corporation, had no power outside of this act to make the subscription. 1 Potter on Corporations, secs. 368–373; Angell & Ames on Corporations, sec. 111; *Miller* v. *Goodwin*, 70 Ill. 659.

Mr. LOUIS D. HOLMES, for the appellee:

We aver and maintain that the act in question is constitutional; that the title expressed the object for which the law was passed, and that the whole law embraces only one subject. This court has passed upon the question. *Board of Supervisors* v. *People*, 25 Ill. 181. See, also, *O'Leary* v. *Cook County*, 21 Ill. 534. We also cite, as upholding these views, Sedgwick on Construction of Constitution, 517, 526, 521 note, 522 note; *Firemen's Association* v. *Lounsbury*, 21 Ill. 511; *Burke* v. *Monroe County*, 77 id. 610; *People* v. *Brislin*, 80 id. 423; *Neifing* v. *Pontiac*, 56 id. 172; *People* v. *Lœwenthal*, 93 id. 205; *Phillips* v. *Albany*, 28 Wis. 360; *Phillips* v. *Covington Bridge Co.* 2 Metc. 219; *Louisville Co.* v. *Ballard*, 2 id. 167.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This case is before us on an agreed statement of facts, from which it appears that on December 31, 1869, the township of Abington issued, in due form, one hundred bonds, of $100 each, payable twenty years after date, bearing interest at the rate of ten per centum per annum, payable annually, the interest installments being represented by coupons or notes, of $10 each, attached to the several bonds for the respective years intervening between issue and maturity.

These bonds were issued pursuant to a vote at an election held May 20, 1869, "upon due notice, under and in pursuance of section 4" of the act of the legislature of Illinois, approved March 4, 1869, entitled "An act to incorporate the Dixon and Quincy Railroad Company," to determine whether the township should subscribe $10,000 to the capital stock of said railroad company, the majority of the votes cast at such election being in favor of such subscription. The coupons sued on were issued solely for interest on such bonds, and the plaintiff below was conceded to be a *bona fide* holder thereof. The bonds were duly registered in the State Auditor's office, and interest was regularly paid thereon from taxes collected on the order and assessment of the Auditor, up to the year 1880. On the trial of the cause in the Mercer circuit court there was entered a judgment for the plaintiff, from which the township prosecutes this appeal to this court.

It is contended on behalf of appellant that said act of incorporation of said railroad company embraced more than one subject, and that the fourth section thereof, by which it was attempted to confer on townships power to subscribe to the capital stock of or make donations to said railroad, and in which are found provisions for elections to decide as to such subscriptions or donations, for taxation to provide for payment of the same if voted, for the issue of bonds to represent the same, etc., covers a subject not expressed in the title of the act, and that for this reason said section is inoperative, as in contravention with section 23, article 3, of our constitution of 1848, which provides that "no private or local law which may be passed by the General Assembly shall include more than one subject, and that shall be embraced in the title." The sole question presented for our determination is, whether the provisions of section 4 of the act named are so far germane to the subject expressed in the title thereof as to be fairly "embraced" therein, or whether that section imports into the act a distinct subject matter not

represented by the title,—for the act being a private law, if said fourth section embodies a subject distinct from that covered by the title of the act, such section must be rejected, under the inhibition of the constitution quoted, and the bonds and coupons issued thereunder must be adjudged invalid.

The question before us is not a novel one. In many cases heretofore determined by this court this provision of the constitution of 1848 has been invoked as against the validity of legislative enactments present 'd for consideration. In *Belleville R. R. Co.* v. *Gregory*, 15 Ill. 20, (decided in 1853,) it was held that a law authorizing the construction of a railroad, with a branch or extension, the purchase of land and the working of coal beds therein, and the purchase or lease of a ferry franchise, did not necessarily cover more than one subject, within the meaning of the constitution of 1848, and that such subject was sufficiently embraced in the title of the bill, which was, "An act to incorporate the Belleville and Illinoistown Railroad Company."

In *Firemen's Benevolent Association* v. *Lounsbury*, 21 Ill. 511, it was held the sixth section of "An act to incorporate the Firemen's Benevolent Association, and for other purposes," approved June 21, 1852, by which section it was provided that there should be paid to the treasurer of said association two per cent of all premiums received in this State by any agent of any foreign fire insurance company on fire insurance in Chicago, was not obnoxious to the provision of the constitution of 1848, under consideration.

In *Board of Supervisors* v. *People*, 25 Ill. 181, the precise point before us came in judgment, and was directly passed upon. In that case the question arose upon the act incorporating the Rock Island and Alton Railroad Company. That act was approved February 14, 1855, and was entitled "An act to incorporate the Rock Island and Alton Railroad Company." (Private Laws, 1855, p. 305.) By section 16 of the act authority was given each of the counties through which

the road should run, to subscribe for stock, borrow money
to pay therefor on bonds, etc., to call elections through the
proper officers to vote upon the question of such subscription,
etc. It was contended that said section introduced a dis-
tinct matter into the bill which was not embraced in its title,
and that it was therefore unconstitutional. Upon this point
the court spoke as follows, viz : "We think the title of this
act sufficient to embrace the whole of the law, and that it is
a compliance with the constitutional requirement. All of the
provisions of the act are appropriately designed to carry out
the object of this corporation. If it was proper to authorize
subscriptions to the stock, it was certainly proper to enable
individuals or counties to subscribe, and specify the terms and
conditions on which they might subscribe, and the mode of
making the subscription."

In *O'Leary* v. *County of Cook*, 28 Ill. 534, it was held that
section 2 of "An act to amend an act entitled 'an act to
incorporate the Northwestern University,' approved February
14, 1855," by which section the sale of ardent spirits within
four miles of the college was prohibited, and which provided
a penalty for violation, and for the recovery thereof, was not
unconstitutional, though no such subject or object was named
in the title of the bill. The rule enforced by the court was
stated in these words, viz : "The object of the charter was to
create an institution for the education of young men, and it
was competent for the legislature to embrace within it every-
thing which was designed to facilitate that object. Every
provision which was intended to promote the well-being of the
institution or its students, was within the proper subject mat-
ter of that law. We can not doubt that such was the single
design of this law. This provision  *   *   *  was designed
for the benefit and well-being of the institution, and this is
the touchstone of the constitutionality of the enactment."

It is true that in the case last cited a dissenting opinion
was filed by Mr. Justice BREESE, yet in such dissent he fully

recognized the general doctrine above announced, and so clearly stated it that his words are worthy of repetition. He says: "As was said by Sanford, J., in the case of *Connor* v. *The City of New York*, 2 Sandf. S. C. R. 361, in which State there is a similar constitutional provision, that the provision was aimed at 'log-rolling,' a well known process by which bills to promote individual interests, and even neighborhood projects, often at the expense of the people of a county at large, were combined together, in order to aggregate a sufficient number of votes to carry them all through the legislature. The learned judge might have added, 'and in one bill.' If to this provision a rigorous and technical construction is given, much of our legislation would be wiped out, as there is scarcely a railroad charter or other act of incorporation that does not embrace subjects other than that distinctly announced in their titles. The charter of the Belleville and Illinoistown Railroad Company was thought to be obnoxious to this objection, as it authorized the purchase of large tracts of land; but this court was of opinion such a subject was germane to the principal object of the bill, and instanced the charter of the Illinois Central Railroad Company, in which provision is made for the accepting of a large grant of land. (*Belleville R. R. Co.* v. *Gregory*, 15 Ill. 20.) The provision itself has rather a shadowy than real importance. The greatest benefit derivable from it is, the people will not be so apt to be deceived as they were when so many subjects in which they had an interest were aggregated in one bill, with a title affording no clue to the contents of the bill. In very many private bills it would be nearly impossible to express all the subjects of it without making the title as voluminous as the bill itself. But few of our private acts could stand the test of a rigid scrutiny."

The rule of construction established in these cases is recognized in many later decisions of this court. See *Neifing* v. *Pontiac*, 56 Ill. 172; *Prescott* v. *Chicago*, 60 id. 121; *People*

v. *Brislin*, 80 id. 423; *Johnson* v. *People*, 83 id. 431; *People* v. *Lœwenthal*, 93 id. 191.

This construction having been announced shortly after the adoption of the constitution of 1848, and having been uniformly followed, and often applied before the passage of the act under consideration, we must conclude that in the adoption of the title of that act the legislature proceeded upon the faith of the repeated adjudications of this court, and that they could not have been deceived into the passage of an act that would not have received their sanction with a more specific title. The title adopted being sufficient to apprise the legislators fairly of the general subject matter of the act, all provisions therein fairly related to that general subject, and designed to conduce to the building of the road named, must, in the light of previous decisions of this court, be held to be fairly embraced in the title adopted.

Appellant cites the language of this court in the cases of *Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, and *Welch* v. *Post*, 99 id. 471. Much stress is laid upon the language of the opinion in the case last cited, in which, when considering a question thought to be somewhat like the question here presented, the court say: "On the authority of *Middleport* v. *Ætna Life Ins. Co.* we are inclined to hold the point is well taken, and if so, it would be conclusive of the whole case." It is, however, at once added: "Without passing upon this question definitely, there is another view of the case that is equally conclusive, upon which the decision may be placed." An examination of the full report of both these cases shows that the decision in each of the cases was placed upon other grounds, and in neither case was the precise question considered here presented to the court,—the relation between the title of the statutes considered in those cases and the clauses of those statutes called in question not being precisely analogous to the relation of the title of the statute now under consideration and the clauses here

assailed.    It is very clear that in what was said in those two cases there was no intention on the part of this court to over-rule the doctrine established so thoroughly by the cases above referred to.

Counsel for appellant cite *Giddings* v. *San Antonio*, 47 Texas, 548, and *San Antonio* v. *Gould*, 34 id. 49.    These decisions directly sustain the contention of counsel, but in doing so squarely overrule the earlier decision of the same court.    (*San Antonio* v. *Lane*, 32 Texas, 405.)    We are sat-isfied that the earlier decision is more in harmony than the later ones with the current of authority, and is supported by the better reason.

In *Phillips* v. *Covington Bridge Co.* 2 Metc. (Ky.) 219, the second section of "An act to amend the charter of the Cov-ington and Cincinnati Bridge Company," authorized the city of Covington to subscribe to the stock of the company, to levy a tax to pay the subscription and interest, to sell bonds, etc.    It was contended that this section was inhibited by section 37, article 2, of the constitution of Kentucky, which provided as follows :    "No law enacted by the General Assem-bly shall relate to more than one subject, and that shall be expressed in the title."    In passing on this point the court used this strong language :    "The only provision in this sec-tion of the act that is involved in the question we are examin-ing is that which relates to the power conferred on the bridge company to sell, and on the city to subscribe and pay for, $100,000 of the capital stock of the company.    It is not denied that this provision, so far as it relates to the bridge company, is consistent with the title of the act; but it is contended that so far as it relates to the city of Covington it is entirely foreign to the subject therein indicated.    The power to sell stock to the city of Covington, necessarily requires that a power should be conferred on the latter to subscribe and pay for it, for without such a power the power to sell would be nugatory.    The subject is the same although

it relates to a transaction to which two corporations are parties, one of whom only is named in the title of the act. If by the act a power had been conferred on the city of Covington to subscribe for the stock of any other corporation but the one named in the title of the act, then the provision would fall within the constitutional prohibition, and be clearly null and void; but as it is restricted in its operation to matters pertaining to the bridge company, and the provisions of the act, so far as they relate to the city of Covington, are apposite to the purpose which was intended to be effected by its passage, and are sufficiently indicated in its title, it is not liable to this constitutional objection. It was certainly not necessary for the legislature to pass two separate acts to effect the object it had in view,—one to enable the company to sell the stock to the city, and another to enable the city to subscribe and pay for it. The constitutional provision relied on must receive a rational construction, and not one that would lead to such an unnecessary and absurd result."

The teachings of these cases are not incompatible with our own decisions.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*